

**Dated: March 27, 2015**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| TERESA JEAN ELAM, ) | Case No. 03-19345-JDL |
| ) | Chapter 7 |
| Debtor. ) | |

**MEMORANDUM OPINION AND ORDER DENYING**
**<u>AMENDED CLAIM OF EXEMPTION</u>**

This matter came before the Court for hearing on March 17, 2015, upon the *Objection to Debtor's Amended Schedule C and Notice and Opportunity for Hearing* filed by Paul Hopkins (hereinafter referred to as "Hopkins"), Karen Goodchild, Peter Goodchild and Goodchild Restorations Inc. [*Doc.* 29] and *Debtor's Response to Objection to Debtor's Amended Schedule C and Notice and Opportunity for Hearing* [*Doc.* 35]. Debtor appeared in person and by counsel and testified, documents were offered and admitted into evidence, and arguments were had by counsel for Debtor and counsel for Hopkins. This memorandum opinion and order taken in conjunction with and as a supplement to the Court's oral ruling from the bench constitutes the Court's findings of fact and conclusions

of law as required by Rule 52 (a) of the Federal Rules of Civil Procedure as incorporated into the Bankruptcy Code via Federal Rule of Bankruptcy Procedure 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and 11 U.S.C. § 522. This is a core proceeding as defined in 28 U.S.C. §157 (b) (2) (A).

## Procedural Background

Debtor filed bankruptcy on August 23, 2003, Case No. 03-19345-NLJ. In Schedule C, Property Claimed as Exempt, under the exemption of "household goods and furnishings", Debtor listed "kitchen furniture room suite, living room furniture, television, computer, bedroom furniture, stereo" with a claimed exemption value of $4000. [Doc. 1]. Thereafter, trustee filed a report of no distribution, Debtor received her discharge on December 10, 2003 [Doc. 14], and the case was closed on February 13, 2003 [Doc. 16].[1] The case remained closed for almost 11 years until Debtor filed her *Motion to Reopen Case* on September 15, 2014. [*Doc*. #20]. In her *Motion* she stated that "she did not list the personal property/furniture on her Schedule B personal property ... and needs to amend the schedules to disclose her interest in the personal property". [*Doc*. 20]. No objections to the *Motion to Reopen* were filed, and on October 6, 2014, the Court entered its order reopening the case and appointing the trustee. [*Doc*. 21].

On January 2, 2015, Debtor filed her *Amended Schedules B, C and Summary of Schedules*. [Doc. 24]. In her *Amended Schedule B* (4), household goods and furnishings,

---

[1] On September 13, 2010, Debtor filed a *pro se* bankruptcy, Case No. 10-15620-NLJ. In that bankruptcy, Debtor listed the identical property which she had claimed as exempt in her 2003 filing. In the case presently before the Court, Debtor only reopened the 2003 case, and that is the only case before the Court today; however, as will be discussed herein, the 2010 case is relevant insofar as it goes to the issue presented herein of "excusable neglect".

2

Debtor listed "Furniture awarded to Debtor in Decree of Divorce. Located Goodchild Restorations, 1330 Dragon St., Dallas, TX 75207" and placed a value of the same at $50,485.  In her Amended Schedule C, property claimed as exempt, Debtor listed "Furniture awarded in Decree of Divorce" and claimed the value of the exempt property to be $50,485.  Hopkins objected to Debtor's proposed exemption, and the ultimate inquiry was reduced to whether Debtor could establish excusable neglect in failing to list the furniture in her 2003 bankruptcy as a basis for permitting the exemption.  Hopkins contends that Debtor should not be able to amend her Schedule C because she cannot demonstrate excusable neglect. Hopkins claims that Debtor only sought to amend her schedules after being confronted with Hopkins' claim in Texas litigation that she was judicially estopped from asserting an interest in the furniture due to her failure to list it in her bankruptcy.

### DISCUSSION

**1. *Standing*.** Before proceeding to the merits of the case, the Court needs to address the issue of "standing".  Debtor asserts that Hopkins, Karen Goodchild, Peter Goodchild and Goodchild Restorations Inc. do not have standing to object to Debtor's requested amendment of her exemption "because he will not be harmed if Debtor is entitled to exempt the furniture". [Doc. 29].  The Court finds that Hopkins has standing to object to the claim of exemption.[2]

---

[2] The Court reserved the issue of standing of the Goodchilds or Goodchild Restorations, Inc. for a later date.

Any party in interest has standing to object to a debtor's exemptions. Fed. Rule of Bankr. P. 4001(b)(1). Debtor listed Hopkins as a creditor in her 2003 bankruptcy and her 2010 bankruptcy. As a creditor, he is clearly a party in interest.

**2**. ***Debtor's Right to Amend Schedules***. Fed. R. Bankr. P. 1009(a) expressly permits a debtor to amend the schedules "as a matter of course at any time before the case is closed", but it specifies no standard for amendment after the case is closed. The relevant standard is supplied by Rule 9006(b) (1). It is this rule that allows the court to enlarge the time period for amending Schedule C upon the reopening of a debtor's bankruptcy case. See e.g. *Moretti v. Bergeron (In re Moretti)*, 260 B.R. 602, 607-08 (Ist Cir. BAP 2001); *In re Wilmoth*, 412 B.R. 791, 796 (Bankr. E.D. Va. 2009); *In re Medley*, 29 B.R. 84 (Bankr. M.D. Tenn. 1983). When an act, such as amending the schedules, "is allowed to be done all within a specified period by these rules," such as before a case is closed, "the court, for cause shown, may at any time in its discretion... on motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect". Fed. R. Bankr. P. 9006(b)(1). The period of time in which the Debtor had the ability to amend her schedules as a matter of right expired when her case was closed. Rule 9006(b)(1) permits this Court, in its discretion and for cause shown, to extend the period of time Debtor had to amend her schedules if the failure to amend before the case was closed resulted from excusable neglect. *In re Wilmoth*, supra. at 796- 97.

An objection to exemptions usually places the burden of proof on the party on the objecting party. Bankruptcy Rule 4003(c) states that "[i]n any hearing under this rule, the

4

objecting party has the burden of proving that the exemptions are not properly claimed." In the present case, however, since it is Debtor moving to amend the schedules after the case had been closed and reopened, the burden of proof is on her. Rule 9006(b)(1) assigns to the party who failed to perform an act timely, and who then seeks to extend the time and only after it has expired, the burden of proving that the failure resulted from excusable neglect. "Excusable neglect is thus both relevant and part of the debtor's burden of proof." *In re Kauffman*, 299 B.R. 641 (Bankr. M.D. Fla. 2003). The determination of whether particular circumstances constitute cause to amend is entrusted to the sound discretion of the bankruptcy judge. Fed. R. Bankr. P. 9006(b)(1) ("the court... *may*... *in its discretion* permit the act to be done" (emphasis added)).

    3. **_Facts._** In her testimony, and pleadings, Debtor asserted that in her 2003 bankruptcy she had assisted her attorney, for whom she was employed as a legal assistant, in preparing the bankruptcy schedules. She testified that her attorney was aware of the approximately $50,000 worth of furniture which she now wishes to claim as exempt, but for reasons unknown it was not scheduled. She testified that the furniture, which was inventory in the antique business operated by her and her ex-husband, was awarded to her under the terms of a Settlement Agreement entered in connection with her divorce proceedings in Texas. Under the Settlement Agreement, which was admitted into evidence, she was offered two alternatives with regard to the furniture: her ex-husband could pay her $50,000 on a no-interest note at $1,000 per month for 50 months or, alternatively, at Debtor's election, she could choose $50,000 worth of furniture items identified in the inventory of Gary Elam and Associates Inc. [Hopkins Exhibit 1, pg 31 of

120]. She elected to take the furniture, but never took possession of it, leaving it in a commercial property which she and her husband had deeded to Hopkins. Debtor claimed that the deed was for security only, and that Hopkins had agreed to hold the property in his name to secure an $80,000 loan which Hopkins had made to Debtor and her husband. Hopkins, on the other hand, as testified to by Debtor and reflected by exhibits admitted into evidence, claimed that the furniture and the commercial real estate had been conveyed by Debtor and her husband to him.

There was testimony, exhibits and argument relating to litigation which Debtor had brought against Hopkins in Oklahoma relating to the ownership of the real property and the furniture, and litigation brought by Hopkins in Texas against Debtor involving their respective interests in the furniture, including a declaratory judgment action in which the state court found that a Uniform Commercial Code Financing Statement, UCC-1, filed by Debtor asserting a security interest in the furniture was not effective to perfect or establish a lien or security interest therein.[3]

***4. Excusable Neglect.*** The above recited facts concerning the furniture are important to understand the context by which this matter of amending the schedules comes before the Court. The divorce and litigation history regarding the furniture, as testified to by Debtor, is also relevant to the Court in that it demonstrates how unlikely it would have

---

[3] In so finding, the Texas state court specifically found that it made "no finding as to any underlying claims of the parties involved, and expressly limits its findings of fact and conclusions of law to the review of a ministerial act" of the filing of the UCC-1. [Hopkins Exhibit 4]. The validity of Debtor's UCC filing is of no relevance to the issues before the this Court. This Court is applying the excusable neglect factors under *Pioneer* to determine whether Debtor is permitted to amend her exemption. "Judicial estoppel" is grounded in principles of bad faith, reliance and prejudice, and the court should not "expand the field" by adding judicial estoppel as an additional factor to disallow an exemption. See *In re Ruiz*, 406 BR 897 (Bankr. E. D. Cal. 2009).

been for Debtor to inadvertently omit something from her bankruptcy schedules that was such a focal point in her life. At the same time, the relative rights, interests or ownership of Debtor or Hopkins in the furniture do not bear upon the ultimate issue which is before the court.[4] The issue before the Court is solely whether Debtor is entitled to amend her Schedule C more than 11 years after her 2003 bankruptcy. That issue is determined by whether Debtor's omission of the furniture was the result of "excusable neglect".

The Court makes a two-part inquiry to determine whether excusable neglect exists. *Pioneer Investment Services Co. v.. Brunswick Associates Ltd. Partnership,* 507 U.S. 380 (1993); *In re Smith*, 2014 WL 7358808 (Bankr. D.N.M. 2014). First, the court must determine whether debtor's failure to take action timely was a result of neglect. *Pioneer,* supra. at 388. If so, the court must decide whether the neglect was excusable. *Id*. at 394-95. The latter determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. Factors to consider include: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Biodiversity Conservation Alliance v. Bureau of Land Management*, 348 Fed. Appx. 669 (10th Cir. 2011) (citing *Pioneer*). These factors do not necessarily carry equal weight; the reason for the delay, and in particular whether the movant was at fault, typically is the

---

[4] Who owns the furniture (or has an interest therein), how any interest of Debtor to the furniture was conveyed and where the furniture is now located, is not relevant to whether Debtor can amend her claim of exemption. Like the Texas court in the declaratory judgment action, nothing in this Court's opinion and order should be interpreted by any party to bear upon any issue regarding respective rights of Debtor and Hopkins in the furniture.

most important factor.  See *U.S. v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay remains a very important factor-perhaps the most important single factor-in determining whether neglect is excusable.")

      Here, the Court finds that Debtor's failure to claim an exemption was neglect.  There is no question that Debtor, and she claims her counsel, were completely aware of the furniture which had been awarded to her under the divorce settlement agreement.  Debtor testified that when the bankruptcy schedules were prepared her attorney had the settlement agreement with the furniture list.  In fact, Debtor testified that Hopkins personally discussed both the real property and the furniture with Debtor's attorney.  There is no doubt that the furniture should have been disclosed in the original schedules, regardless of whether it was disclosed on Schedule B and/or as exempt on Schedule C.  That Debtor may have informed her bankruptcy attorney about the furniture does not absolve her of her affirmative duty to make full disclosure of property that should have been scheduled.  *Barger v. City of Cartersville*, 348 F.3d. 1289 (11th Cir. 2003) ("the attorney's omission is no panacea").  Furthermore, Debtor was a legal assistant for her bankruptcy attorney and was familiar with completing the forms and the use of "Best Case" bankruptcy software.  The Court had the opportunity to observe Debtor's demeanor and hear her testimony.  She is highly intelligent, experienced in bankruptcy matters and is not the average client or *pro se* debtor.  There was a greater affirmative duty on her to fully and accurately complete the bankruptcy schedules and statement of affairs than might otherwise be imposed upon the average debtor.  By the time Debtor filed her second bankruptcy *pro se* in 2010, she was working as a bankruptcy legal assistant for another law

firm. She still failed to disclose the furniture anywhere in the bankruptcy filings. This omission compounded her neglect.

Second, the Court finds that Debtor's neglect was not excusable. Of the four *Pioneer* factors outlined above, three weigh against Debtor (prejudice to creditors, the length of the delay, and whether the delay was within the control of the debtor). First, the trustee and the creditors were prejudiced by the fact that they were denied the opportunity to investigate whether the furniture was, in fact, exempt or an asset of the bankruptcy estate. Second, the delay in attempting to claim an exemption 11 years after filing bankruptcy is an extraordinary length of time. Third, it is beyond question that the delay was within the control of Debtor. The fourth factor, good faith, taken in the light most favorable to Debtor might be neutral; however, the failure of Debtor to disclose the existence of the furniture, and not just run-of-the-mill household furniture (with the value of over $50,000 compared to the $4000 of different furniture listed in her schedules), anywhere in her schedules and statement of financial affairs, let alone exclude the same from Schedule C, at the very least could be taken to reflect a lack of candor.

Even if the Court were not to find Debtor subjectively intended to deceive the trustee or creditors, she was at least sophisticated enough to know that all assets must be disclosed. Courts addressing the debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failures inadvertent omissions or mistakes only when, in general, "either (1) the debtor had no knowledge of the undisclosed asset, or (2) the debtor had no motive to conceal it." *In re Ford*, 492 F.3d 1148 (10th Cir. 2007); *In re Grogan*, 300 B.R. 804, 809 (Bankr. D. Utah 2003) ( citing *In re Coastal Plains Bank*, 179 F.3d 197, 210 (5th Cir. 1999; *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002). Here,

Debtor, and, according to Debtor's testimony, her counsel, did have knowledge of the furniture. Given the fact that the furniture was never moved to Debtor's home in Oklahoma which might have placed in question her claim to exempt the same as "household furniture held primarily for the personal, family or household use" under 31 O.S. § 31(6), there might have been a motive for Debtor to conceal it from creditors. This Court, however, need not discern her motives. Good faith or no, any fault for failing to exempt the furniture timely lies clearly with the Debtor.

## CONCLUSION

Based upon the foregoing, the Court is persuaded that the failure to include the furniture in the Debtor's 2003 bankruptcy until attempting to reopen the case 11 years later does not constitute excusable neglect entitling her to amend her schedules so as to claim the property as exempt. Therefore, Hopkins' *Objection to Debtor's Amended Schedule C* is sustained, and Debtor shall not be permitted to amend her *Schedule C*.

# # #